IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

TA'KUAN BINGHAM,                    )
    Petitioner,                    )
                                   )
v.                                  )    No. 1:25-cv-833 (RDA/LRV)
                                   )
CHADWICK DOTSON,                    )
    Respondent.[1]                 )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Virginia prisoner Ta'Kuan Bingham's ("Petitioner" or "Bingham"), *pro se* amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his November 10, 2021 convictions in the Circuit Court of Gloucester County, Virginia, for arson and three counts of animal cruelty. Dkt. No. 11. Respondent has filed a Rule 5 Answer and a Motion to Dismiss, with a supporting brief and exhibits. Dkt. Nos. 37-39. Petitioner was advised of his rights pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 42, and he filed a response to the motion to dismiss, Dkt. No. 43. Accordingly, this matter is now ripe for disposition. For the reasons that follow, Respondent's Motion to Dismiss will be granted, and the petition will be dismissed with prejudice.

## I. PROCEDURAL HISTORY

Bingham is detained pursuant to final judgments of the Circuit Court of Gloucester County dated November 10, 2021. On August 21, 2021, Bingham pleaded guilty to arson, in violation of Virginia Code § 18.2-77, and three counts of animal cruelty, in violation of Virginia Code § 3.2-6570. On November 8, 2021, the court heard Bingham's motion to withdraw his pleas, denied the

---

[1] Respondent seeks to substitute Joseph Walters in lieu of Chadwick Dotson because Walters succeeded Dotson. Dkt. No. 40. The motion will be granted. Bingham also filed an application to proceed *in forma pauperis* on January 5, 2026, which was rendered moot when he paid the filing fee on January 30, 2026. Dkt. No. 30.

motion, and then sentenced him to ten years in prison for arson, and two years in prison for each animal cruelty conviction. All the sentences were concurrent with each other for a total of ten years to serve, and the judgment order was entered on November 10, 2021. *Commonwealth v. Bingham*, Case Nos. CR21-151 through -154 ("R. at __"); Dkt. No. 39-1.

Bingham, by counsel, timely noted an appeal of his convictions to the Court of Appeals of Virginia, alleging the trial judge erred in denying his motion to withdraw his guilty pleas. On May 17, 2022, the court affirmed his convictions. *Bingham v. Commonwealth*, Record No. 1396-21-1, 2022 WL 1547984 (Va. Ct. App. May 17, 2022); Dkt. No. 39-4. In support of the plea, the Commonwealth proffered its evidence.

> On the morning of January 19, 2021, McLaughlin left the house around 4:00 a.m. to attend work. McLaughlin believed that her daughter was the only other person in the house, but Bingham was there, too. At 9:30 a.m., McLaughlin's daughter left for a doctor's appointment, leaving only Bingham in the house. The Great Pyrenees and the cat were allowed to roam the house, while the Dachshund was fastened in her crate.

> McLaughlin returned home around 3:00 p.m. to find her house on fire. She ran to her backyard fence, which was open, although she usually kept it closed and locked. McLaughlin opened the back door, but she could not get in because of the smoke.

> W.L. Johnston of the Gloucester Fire Department arrived on the scene. He found the Dachshund deceased in her crate and the [deceased cat] in the master bedroom. The Great Pyrenees was treated for smoke inhalation but was in "pretty bad shape" and ultimately euthanized. The necropsies for the Dachshund and the cat revealed that they died from smoke inhalation.

> Two days later, Investigator Graham of the Gloucester Sheriff's Department interviewed Bingham about the fire. Bingham at first denied any knowledge about the fire, claiming that he went to work after McLaughlin's daughter left the house. Bingham also told Graham that McLaughlin had prior issues with her electrical system and speculated that the fire was probably electrical.

> Special Agent Mark Guyer with the Virginia State Police performed an investigation of the fire's cause and origin. He ruled out all but an intentional cause for the fire.

> The police arrested Bingham ten days after the fire. During his interview, he at first denied, once again, having any knowledge about the cause of the fire. But as Bingham kept talking to the police, he admitted that on the night before the fire, he slept at McLaughlin's house and had an argument with her. Bingham told the police

2

that he was angry with McLaughlin and "wanted some type of retaliation or vengeance against [her]." He explained that after McLaughlin's daughter left the house, he took a paper towel to McLaughlin's bedroom, set it on fire, and put it on her bed. Bingham told the police that the fire grew out of control. He claimed that he opened the back door and got both dogs outside, but that he could not find the cat.

At the end of the Commonwealth's proffer of evidence at the plea hearing, Bingham's counsel added some clarifying information for the court. Bingham explained that he told the police that the cat was on the bed when he set the fire. He stated that the cat caught fire and began to run around the room. He said that he "attempted to catch the cat to put the fire out but the cat continued to run around until he heard it stop whining." Bingham also said he told the police that he left the back door open for the dogs, but that they did not leave the house. Finally, Bingham explained that he had attempted to extinguish the fire[,] but it spread too quickly. He told the trial court that "he set the fire[,] but it was not [done] intentionally." Based on his guilty pleas and the Commonwealth's proffer, the trial court convicted Bingham on all charges.

*Id.* at 1-2. The Court of Appeals began its analysis by noting "that the existence of a viable defense alone is not enough to set aside a guilty plea." *Bingham*, 2022 WL 1547984, at *3 n.2 (citing *Pritchett v. Commonwealth*, 61 Va. App. 777, 788 (2013)). Thus, "a trial court must also consider whether the motion to withdraw was made in good faith." *Id.* In affirming the denial of the motion to withdraw the guilty pleas, the court held that

the trial court did not err in finding that Bingham failed to establish a reasonable basis for withdrawing his guilty pleas. In arguing his motion, Bingham explained that he only pled guilty because he thought that he would receive time served. And he testified that it would be "dumb" to set the house on fire as the result of an argument because the house contained his own property. He also said that he would not kill innocent animals because he was angry with someone and testified that he lacked motive to commit these crimes because he had other places he could have stayed. While Bingham's earlier *pro se* letter to the court mentioned Ronnie Rose and Danielle Rose as potential alibi witnesses, neither Bingham nor his counsel so much as mentioned these individuals during the hearing, let alone provided a proffer of what they would testify to at trial.

When asked about his earlier confession to the police, Bingham did not deny the confession but claimed he did not remember it because he was under the influence of drugs when he spoke to the officer. Bingham did not explain why he failed to contest the Commonwealth's proffer of evidence at his plea hearing (which included his confession), or why Bingham's prior counsel had in fact corrected the Commonwealth's evidence by providing more precise information about Bingham's confession to the police. Specifically, his counsel added that Bingham

3

told the police that the cat was on the bed when he set the fire and that the cat itself then caught on fire and ran around the room until it "stopped whining." In addition, his counsel said Bingham explained that he tried to extinguish the fire and that he left the back door open for the dogs to escape.

. . . The trial court provided Bingham [with] the opportunity to call witnesses, submit affidavits, or proffer evidence, but he failed to do so. The record supports the trial court's finding that Bingham failed to offer a reasonable basis for moving to withdraw his pleas.

*Id.* at *4.

Bingham, by counsel, timely noted an appeal of his convictions to the Supreme Court of Virginia, alleging the same error—that the trial judge erred in denying his motion to withdraw his guilty pleas. On September 30, 2022, the court refused his petition for appeal. *Bingham v. Commonwealth*, Record No. 220296, Dkt. No. 39-6.

On August 7, 2023, Bingham, proceeding *pro se*, filed a motion to vacate his convictions in the Gloucester County Circuit Court, Dkt. No. 39-7, arguing that he should be granted a "retrial" because he "had a reasonable defense to be offered and was denied the right to withdraw [his] guilty plea." *Id.* at 1. The court dismissed Bingham's motion to vacate on August 7, 2023, finding that the motion was barred by Va. Sup. Ct. Rule 1:1, which prohibits the modification of a final order more than 21 days after the date of entry, and that none of the exceptions to Rule 1:1 applied. Dkt. No. 39-8; *Commonwealth v. Bingham*, Case No. CL23-1024. Bingham did not appeal the dismissal of his motion to vacate.

On October 30, 2023, Bingham filed a petition for a writ of mandamus in the Supreme Court of Virginia, Dkt. No. 39-9, which raised the following claim:

On the 8th day of November 2021 I was denied my professionally entitled withdrawal of guilty plea which was coercion on my public defender Julie Lillrose Churchill telling me to answer all the judge's questions no except the part where she asked do you understand all these questions but d[ue] to my witness never being called and my 5th Amendment rights to due process and equal treatment to fair trial Article 10. I was asking for another trial an[d] motion to withdraw my c[oerced] guilty plea I can easily prove my innocen[ce] at trial if I was giv[en] a fair trial.

4

*Id.* at 1. On November 13, 2024, the court dismissed Bingham's petition for a writ of mandamus, holding that "mandamus does not lie in this case [because] petitioner does not seek to compel a public official to perform a purely ministerial duty." Dkt. No. 39-14.

On September 12, 2024—while his petition for a writ of mandamus was pending—Bingham filed a petition for a writ of habeas corpus in the Gloucester County Circuit Court, which raised the followings claims:

1) He "only pled guilty under falsified promise of time served and would've pled innocent had [he] known that [his] public defender Julie Lillrose Churchill was trying to diminish [his] liberty . . . ." Dkt. No. 39-15 at 8-9.
2) "Ineffective assistance of counsel Julie Lillrose Churchill gave me advice and intentional misconduct with malicious intent." *Id.* at 9.
3) "Racial harassment, racial profiling." *Id.*
4) He "met all criteria[] to withdraw [his] guilty plea and was denied the right to [his] 5th, 8th, 6th, 14th Amendments were violated." *Id.*

The circuit court found that Bingham's state habeas petition was barred by Virginia's statute of limitations, Virginia Code § 8.01-654, and dismissed the petition on November 14, 2024. Dkt. No. 39-16; *Bingham v. Donner, et al.*, Case No. CL24-1211 ("Hab. at ___"). Bingham did not appeal the circuit court's dismissal of his habeas petition.

Bingham filed a federal petition for a writ of habeas corpus with this Court on June 18, 2024, Dkt. No. 39-17, which was denied without prejudice on February 7, 2025. Dkt. No. 39-18.[2]

_____

[2] Bingham's first federal § 2254 petition was dated June 18, 2024, marked received by the Virginia Department of Corrections ("VDOC") on June 25, 2024, and was received by the Clerk on June 28, 2024. It was filed on July 11, 2024. *Bingham v. Anderson*, No. 1:24-cv-01225-RDA-WBP, Dkt. No. 1. On February 27, 2025, the Court denied the application to proceed *in forma pauperis* because his financial information indicated that he had the ability to pay the $5.00 filling fee petition and dismissed the petition without prejudice. The order provided that if Bingham paid the filing fee within thirty days, the Court would reopen the petition. *Id.*, Dkt. No. 8. The Fourth Circuit affirmed the dismissal on June 17, 2025. *Id.*, Dkt. No. 16.

## II. THE FEDERAL PETITION

Bingham filed a one-page handwritten habeas petition dated April 15, 2025, received by the VDOC mail room on April 24, 2025, and received by the Clerk on April 29, 2025. Dkt. Nos. 1, 1-3.[3] On May 21, 2025, Bingham was ordered to file a proper § 2254 petition on a standardized form. Dkt. No. 3. Bingham filed the amended petition on June 23, 2025, Dkt. No. 11, and then filed pleadings seeking to amend his habeas petition. On October 8, 2025, the Court resolved the pleadings seeking to amend the habeas petition and ordered Bingham to file a second amended petition. Dkt. No. 20. Bingham, again, filed several pleadings seeking to amend his already amended habeas petition and, on January 28, 2026, the Court ordered Bingham to file a third amended petition. Dkt. No. 32. On February 23, 2026, Bingham filed the present § 2254 petition for writ of habeas corpus with this Court, Dkt. No. 33, which raises the following claims:

Ground 1:  "Ineffective assistance of counsel" because "Julie Lillrose Churchill told [him] if [he] pled guilty [he] would receive time served," Dkt. No. 33 at 5;

Ground 2:  "Due process violation" because he "asked for witnesses and this was denied," *Id.* at 7;

Ground 3:  "Due process violation" because it was unconstitutional "for a sitting judge to force a plea agreement without consent," *Id.* at 8; and

Ground 4:  "Bias and prejudice." *Id.* at 10.[4]

---

[3] Bingham's original pleading was delivered to the prison mail room on April 24, 2025. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991) (an incarcerated *pro se* litigant's habeas petition is considered filed when it is delivered to prison officials to be mailed to the court). Bingham has not disputed this date in his response. Accordingly, the record establishes that his original petition was filed April 24, 2025.

[4] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and it is "the district court's duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360–61 (8th Cir. 1996) ("[D]istrict courts must be careful to adjudicate only those claims upon which the petitioner seeks relief and take care not to decide claims upon which the habeas petitioner never intended to seek relief.").

6

## III. STATUTE OF LIMITATIONS

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts). The Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace*, 544 U.S. at 413. To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

Here, Bingham's direct appeal concluded on September 30, 2022, when the Supreme Court of Virginia refused his petition for appeal. Bingham's conviction became final for AEDPA purposes on December 29, 2022, 90 days after the Supreme Court of Virginia refused his petition for appeal. *See Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), the judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or

7

in state court, expires"). Bingham filed several post-conviction motions, but none of them qualifies for statutory tolling.

*A. Statutory Tolling*

Bingham's motion to vacate did not toll the statute of limitations because it was dismissed pursuant to Va. Sup. Ct. R. 1:1 as untimely. *See Pace*, 544 U.S. at 417 ("time limits, no matter their form, are 'filing' conditions"). In Virginia, if an untimely post-trial motion is dismissed pursuant to Rule 1:1, "that motion was not 'properly filed' and it follows that the § 2244(d) one-year limitations period was not tolled during the pendency of that motion and subsequent appeals stemming from denial of the motion." *Hall v. Johnson*, 332 F. Supp. 2d 904, 909 (E.D. Va.), *appeal dismissed*, 115 F. App'x 162 (4th Cir. 2004); *White v. Clarke*, 2023 WL 3871709, *4 (E.D. Va. June 6, 2023) ("Petitioner's motion to vacate did not toll the statute of limitations period because . . . [t]he circuit found [it] was barred by Va. Sup. Ct. Rule 1:1."); *see also Crowley v. Landon*, 780 F.2d 440, 444 (4th Cir. 1985) (noting that Rule 1:1's termination of a trial court of jurisdiction after twenty-one days was "unambiguous").

Bingham filed a petition for a writ of mandamus on October 30, 2023, and, at that time, 305 days of the one-year statute of limitations had lapsed. The Court will assume that the time was tolled from October 30, 2023, through November 13, 2024, when the mandamus was dismissed for purposes of this motion.[5] On November 13, 2024, Bingham had sixty days remaining to file his federal petition. Bingham, however, filed this federal petition 162 days later on April 24, 2025. While he did file a previous federal petition (filed on filed on June 25, 2024, and dismissed without

---

[5] Respondent argues that the state mandamus petition was not properly filed until June 21, 2024, when he brought his mandamus petition "into compliance with state-filing requirements." Dkt. 39 at 7. It is unnecessary to decide the issue because assuming the statute of limitations was tolled from October 30, 2023, through November 13, 2024, the § 2254 petition is untimely.

prejudice on February 7, 2025), that petition did not toll the federal statute of limitations. "Although the limitations period is tolled during the pendency of a 'properly filed application for *State post-conviction* or other collateral review,' § 2244(d)(2), *the filing of a petition for habeas corpus in federal court does not toll the statute of limitations.*" *Rhines v. Weber*, 544 U.S. 269, 274-75 (2005) (emphasis added).[6]

The filing of the state habeas petition in circuit court did not toll the federal statute of limitations because it was dismissed as untimely under the state habeas statute of limitations, Virginia Code § 8.01-654(A)(2). Dkt. No.39-16 at 2. Again, an untimely state petition is not properly filed, *Pace*, 544 U.S. at 413, and therefore does not toll the federal statute of limitations.

---

[6] In *Tucker v. Kingston*, 538 F.3d 732 (7th Cir. 2008), the court addressed a procedurally similar posture. The petitioner's federal statute of limitations began to run on July 21, 2003. *Id.* at 733. The petitioner filed a federal § 2254 petition on December 23, 2003, that was dismissed without prejudice on February 12, 2004, for failure to exhaust. *Id.* The petitioner "filed a petition for postconviction relief in the state trial court on April 12, 2004, thereby tolling the limitations period for filing another § 2254 petition until September 11, 2006, when the state supreme court denied leave to appeal." *Id.* Between July 21, 2003, and April 12, 2004, 266 days of the federal statute of limitations had lapsed—leaving the petitioner with 99 days to file his § 2254 petition. The petitioner, however, did not file his federal habeas petition until January 16, 2007, which was 126 days after the dismissal of his state petition. *Tucker* affirmed the district court's dismissal of the petition as untimely finding the petition was filed "26 days too late" and the "first federal petition did not stop the clock." *Id.* (citing 28 U.S.C. § 2244(d)(2); *Rhines*, 544 U.S. at 274-75 ("the filing of a petition for habeas corpus in federal court does not toll the statute of limitations"); *Duncan*, 533 U.S. at 181-82 (same); *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002)); *see also Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) (if a case is dismissed without prejudice, the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by the filing of that case). The Fourth Circuit quoted *Elmore* about the consequences of a dismissal without prejudice and a subsequent refiling—"if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 330 (4th Cir. 2012) (quoting *Elmore*, 227 F.3d at 1011).

*Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (explaining that a state collateral proceeding is not "properly filed" if it is filed untimely).[7] Absent equitable tolling, Bingham's federal petition is untimely.

### B. Equitable Tolling

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Pace*, 544 U.S. at 418. A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test, *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 12304, 1307 (11th Cir. 2008)), and specify the steps he took in diligently pursuing his federal claim, *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition, he must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

Bingham has not been diligent in filing his claims with this Court. Bingham's claims concern his allegation that he pleaded guilty because his attorney (Julie Lillrose Churchill) told him that he would be sentenced to time served; the trial judge erred and improperly denied his motion to withdraw his plea; and he was denied his witnesses. The record establishes that Bingham was aware of all his alleged claims during his trial proceedings, his subsequent direct appeal, and before he filed his state habeas petition.  Specifically, Bingham testified about the time served

---

[7] As the Fourth Circuit has explained, "[i]n *Artuz*, the Supreme Court held that time limits on state petitions are 'condition[s] to filing,' and that an untimely petition would not be deemed 'properly filed.'" *Escalante v. Watson*, 488 F. App'x 694, 697 (4th Cir. 2012) (quoting *Artuz*, 531 U.S. at 11).

10

promise by his attorney during the November 8, 2021 hearing on his motion to withdraw his plea, 11/8/21 Tr. at 5-6; his alleged witnesses (Ronnie Rose and Danielle Rose) were mentioned as alibi witnesses in a letter by Bingham to the trial judge filed on February 11, 2022, R. at 304, *Bingham*, 2022 WL 1547984, at *2, 4; he mentioned being denied witnesses in his motion to vacate, filed on August 7, 2023, Dkt. No. 39-7 at 3; and he mentioned other witnesses (Abernathy and Vangorden) in his petition for a writ of mandamus, filed on October 30, 2023, Dkt. No. 39-9 at 3.

In his petition, Bingham states, apparently as his basis for equitable tolling, that he is not a lawyer, his petition should be liberally construed, and that he "was unable to find a lawyer that[']s what took me so long to file because [he is] unskilled at law." Dkt. No. 33 at 13, 14. However, "unfamiliarity with the legal process, lack of representation, or illiteracy does not constitute grounds for equitable tolling." *Burns v. Beck*, 349 F. Supp. 2d 971, 974 (M.D.N.C. 2004); *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (explaining that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling"); *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003) ("[E]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling."); *see also Marsh v. Soares*, 223 F.3d 1217, 1219 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law,' even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing."). Accordingly, Bingham is not entitled to equitable tolling.

### C. Actual Innocence

Bingham does not make an express assertion of actual innocence, but such a claim may be used to toll the statute if petitioner makes a compelling showing of innocence. *See McQuiggin v.*

11

*Perkins*, 569 U.S. 383, 390 (2013). *McQuiggin* recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring claims after the statute of limitations expires. *Id.* at 386. "[A] credible showing of innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 390. However, "claims of actual innocence are rarely successful," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "should not be granted casually," *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under *Schlup* is a demanding one. It requires that "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). In order to demonstrate a fundamental miscarriage of justice exception to the federal statute of limitations, a petitioner must present new evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

The new evidence must be "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Thus, to accompany any actual innocence claim, the petitioner must put forward new, credible evidence that supports his assertion. The new evidence must be evaluated with any other admissible evidence of guilt, *Wilson*, 155 F.3d at 404-05, and must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999). If a petitioner meets the burden of producing new, truly reliable evidence of his innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of

12

admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327-28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327-28). Bingham's allegations fail to satisfy either of these requirements.

Although he sought to withdraw his guilty plea claiming he had alibi witnesses, he did not subpoena them to the hearing or proffer their testimony. As noted by the Court of Appeals,

> While Bingham's earlier *pro se* letter to the court mentioned Ronnie Rose and Danielle Rose as potential alibi witnesses, neither Bingham nor his counsel so much as mentioned these individuals during the hearing, let alone provided a proffer of what they would testify to at trial.
>
> When asked about his earlier confession to the police, Bingham did not deny the confession but claimed he did not remember it because he was under the influence of drugs when he spoke to the officer. Bingham did not explain why he failed to contest the Commonwealth's proffer of evidence at his plea hearing (which included his confession), or why Bingham's prior counsel had in fact corrected the Commonwealth's evidence by providing more precise information about Bingham's confession to the police. Specifically, his counsel added that Bingham told the police that the cat was on the bed when he set the fire and that the cat itself then caught on fire and ran around the room until it "stopped whining." In addition, his counsel said Bingham explained that he tried to extinguish the fire and that he left the back door open for the dogs to escape.
>
> . . . The trial court provided Bingham [with] the opportunity to call witnesses, submit affidavits, or proffer evidence, but he failed to do so.

*Bingham*, 2022 WL 1547984 at *4. To the extent Bingham's pleadings can be construed to assert a claim of actual innocence, the record negates any claim of actual innocence.

### D. *Martinez v. Ryan*

Although Bingham does not cite *Martinez v. Ryan*, 566 U.S. 1 (2012), its exception does not apply. Under *Martinez*, a prisoner may establish cause for a default of an ineffective assistance of trial counsel claim in two circumstances: (1) "where the state courts did not appoint counsel in

13

the initial-review collateral proceeding for a claim of ineffective assistance at trial;" or (2) "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)." 566 U.S. at 14. The *Martinez* exception does not apply to Bingham because it "'has no application to the operation or tolling of the § 2244(d) statute of limitations' for filing a § 2254 petition." *Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1249 (11th Cir. 2014) (quoting *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 943 (11th Cir. 2014)); *Wilson v. Perry*, 2014 WL 4685405, at *1 (M.D.N.C. Sept. 19, 2014) ("*Martinez* . . . addressed whether a procedural bar, rather than a time bar, should apply to an ineffective assistance of counsel claim from a state habeas proceeding. Thus, *Martinez* . . . [is] inapplicable to the determination of untimeliness under the AEDPA one-year statute of limitations."), *appeal dismissed*, 588 F. App'x 216 (4th Cir. 2014).

Accordingly, for all of these reasons, the petition is untimely and will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Respondent's Motion to Dismiss, Dkt. No. 37, is GRANTED; and it is

FURTHER ORDERED that the petition is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Petitioner's motion to proceed *in forma pauperis*, Dkt. No. 29, is DENIED as MOOT; and it is

FURTHER ORDERED that Respondent's motion to substitute Joseph Walters as Respondent, Dkt. No. 40 is GRANTED, and the Clerk is DIRECTED to amend the docket to reflect the same.

To appeal this decision, Petitioner must file a written notice of appeal with the Clerk's office within thirty (30) days of the date of this Order. *See* Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal and including the date of the Order the

petitioner wishes to appeal. Failure to file a timely notice of appeal waives the right to appeal this decision. Petitioner also must obtain a certificate of appealability ("COA") from a circuit justice or judge. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). This Court expressly declines to issue a COA.[8]

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of Respondent; to send a copy of this Memorandum Opinion and Order to Petitioner and counsel of record for Respondent; and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
May 20, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[8] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For the reasons articulated in this Memorandum Opinion and Order, Petitioner fails to meet this standard.

15